UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PETROLEUM HELICOPTERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-00840-TWP-DML |
| | ) | |
| ROLLS ROYCE CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PARTIES' MOTIONS IN *LIMINE*__**

This matter is before the Court on the parties' motions *in limine*. In its Motion in *Limine* (Filing No. 213), Plaintiff Petroleum Helicopter, Inc. ("PHI") seeks to prohibit Rolls Royce and its witnesses from introducing into evidence or providing testimony regarding seven topics. Rolls Royce Corp.'s ("Rolls Royce") Motion's in *Limine* (Filing No. 215; Filing No. 217; Filing No. 219; Filing No. 221; Filing No. 223; Filing No. 225) seek to prohibit evidence and testimony regarding six topics. For the following reasons, PHI's Motion in *Limine* is **granted in part and denied in part**, and Rolls Royce's Motions in *Limine* are **granted in part and denied in part, as detailed below.**

## I. BACKGROUND

### A. Undisputed Facts

Rolls Royce manufactures turbine aircraft engines and parts used in helicopters. (Filing No. 193 at 1.) PHI, one of Rolls Royce's long standing customers, operates one of the largest fleet of rotary aircraft in the world, and also offers helicopter transport services. *Id.* In 1999, Rolls-Royce designed, manufactured, and sold an engine to Bell Helicopter Canada. (Filing No. 15 at 3; Filing No. 193 at 2.) In 2009, Bell Helicopter Canada installed Rolls Royce's engine into the

helicopter at issue. (Filing No. 193 at 2.) Thereafter, in 2011, PHI purchased a replacement engine component known as a No. 2 bearing from Rolls Royce and independently installed it into the helicopter's engine. *Id.* at 3. The replacement No. 2 bearing included a Limited Warranty for spare modules and parts. *Id*. at 7.

On December 1, 2011, the No. 2 bearing failed, causing the entire engine to lose power. (Filing No. 197 at 3.) This malfunction forced the pilot to perform an emergency landing onto the Gulf of Mexico. (Filing No. 15 at 3.) During the emergency landing, the pilot inflated skid mounted floats which were designed to keep the helicopter from sinking. *Id.* The pilot and his passenger then entered inflated life rafts and were rescued by M/V RUSTY EYMARD within ten minutes. (Filing No. 193 at 2.) The rescuers returned to the floating helicopter and attempted to tow the helicopter to a platform for recovery. *Id.* at 8. After towing the helicopter for approximately an hour, the float deflated. *Id*. The helicopter inverted into the salt water, resulting in the helicopter's destruction. *Id.* at 2.

APICAL Industries, Inc. ("APICAL") designed, manufactured, and sold the helicopter's float system to PHI. (Filing No. 15 at 3.) Thereafter, in 2006, APICAL incorporated "doubler" float systems to prevent floats from rupturing and deflating. (Filing No. 193 at 6.) On November 11, 2006, APICAL advised Offshore Helicopter Support Services, Inc., ("OHS") and other service agents to retrofit existing floats with a "doubler." *Id*. In November 2011, less than one month before the emergency landing, OHS repaired and reworked the float system on PHI's helicopter. (Filing No. 15 at 11.) While servicing the helicopter, OHS neither retrofitted a "doubler" onto the helicopter's float, nor did OHS advise PHI of the need for a retrofit. (Filing No. 193 at 6.)

**B.     The Louisiana Litigation**

On January 30, 2013, PHI filed an Amended Complaint in the Western District of Louisiana against Rolls Royce, APICAL, and OHS, requesting compensatory damages and

attorney's fees. (Filing No. 15.) PHI asserted redhibition claims against Rolls Royce and APICAL, as well as a strict products liability claim against APICAL, and a breach of contract claim against OHS. *Id.* PHI specifically contends that Rolls Royce is liable because the "engine contained defects in its manufacture or design that rendered it useless, or its use so inconvenient that it must be presumed that PHI would not have bought the Engine had it known of the defects." *Id*. at 4. Rolls Royce then moved the United States District Court for the Western District of Louisiana to dismiss or transfer PHI's claims against it to the Southern District of Indiana, pursuant to a forum selection clause contained in the Limited Warranty. On May 29, 2015, PHI's redhibition claims against Rolls Royce were severed and transferred to this Court. (Filing No. 160.)

Thereafter, on July 18, 2016, Rolls Royce moved for summary judgment, asserting that PHI is bound by the Limited Warranty, PHI's claims are barred by the "economic loss" doctrine, and a superseding cause caused the destruction of PHI's helicopter. (Filing No. 192.) In response, PHI argued a material issue of fact remains because a design defect in the engine was not subject to the Limited Warranty and the economic loss and superseding cause doctrines were inapplicable. (Filing No. 197.) In reply, Rolls Royce asserted, among other things, that PHI's engine defect claim was time-barred pursuant to Ind. Code Ann. § 26-1-2-725. (Filing No. 199.) Thereafter, the Court granted in part and denied in part Rolls Royce's Motion for Summary Judgement, specifically concluding that: 1) pertinent sections of the Limited Warranty are conscionable; 2) a genuine issue of material fact remains regarding whether the engine contained a design defect because the Limited Warranty applies only to the No. 2 bearing; 3) a genuine issue of material fact remains regarding whether the Limited Warranty failed to serve its essential purpose; 4) a genuine issue of material fact remains as to the superseding cause defense, specifically whether the capsizing of the helicopter

3

was foreseeable to Rolls Royce; and 5) the economic loss doctrine is inapplicable. The Court further found that Rolls Royce waived its statute of limitations defense because it filed an answer to PHI's Amended Complaint, but failed to argue that PHI's design defect claim was time barred, and Rolls Royce raising the defense in a Reply Brief amounted to a surprise and undue prejudice to PHI, as it failed to afford PHI prior notice or the opportunity to respond to the defense. ([Filing No. 204](#).)

## II. LEGAL STANDARD

The Court excludes evidence on a motion *in limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* at 1400. Moreover, denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id.* at 1401.

## III. DISCUSSION

PHI and Rolls Royce each seek an order in *limine*, prohibiting the introduction of certain evidence, testimony, and argument during the trial of this matter.

**A.  PHI's Motion in *Limine***

PHI moves in *limine* on seven topics. Rolls Royce filed a Response on January 11, 2017, opposing only four of PHI's seven Motions. ([Filing No. 234](#).) The Court will address each request in turn.

**1.  Any reference to the probable cause report issued by the National Transportation Safety Board ("NTSB").**

PHI asks the Court to exclude reference to the probable cause report issued by NTSB regarding the incident in this case. *See* 49 U.S.C. § 1154(b) ("No part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report"). PHI contends that § 1154(b) permits the admissibility of the NTSB's Factual Report, but forbids the use of the Probable Cause Report. PHI further argues that the Court should exclude the evidence pursuant to Federal Rule of Evidence 403, because the jury will unduly rely upon the NTSB Probable Cause Report and the purpose of § 1154(b) is to prevent reliance of the sort. The Court concludes that such evidence is prohibited and would be unfairly prejudicial. Accordingly, the Court **GRANTS** PHI's request to exclude any reference to the probable cause report issued by NTSB.

2. **Any testimony alleging that a member of the RUSTY EYMARD crew punctured the floatation device or the vessel prior to the helicopter capsizing and sinking.**

PHI asks the Court to exclude any testimony or reference alleging that a member of the RUSTY EYMARD crew punctured the floatation device or the vessel prior to the helicopter capsizing and sinking. PHI contends that any reference should be excluded pursuant to Federal Rules of Evidence 401, 402 and 403, because it would be contrary to the evidence and unduly prejudicial. In response, Rolls Royce asserts that it is unaware of any evidence, and has no evidence to suggest, that a RUSTY EYMARD crew member punctured the float or vessel. Accordingly, because Rolls Royce does not intend to offer such evidence, the Court **GRANTS** PHI's request to exclude any reference alleging that a member of the RUSTY EYMARD crew punctured the floatation device or the vessel prior to the helicopter capsizing and sinking.

3. **Any reference in the presence of the jury that certain unavailable RUSTY EYMARD witnesses are dishonest.**

PHI next requests the Court to prohibit references made in the presence of the jury alleging RUSTY EYMAED crew members James Dardar, Jared Brunet, and Michael Wittman were dishonest during their depositions. PHI argues that the Court should exclude any testimony or reference of the above nature, pursuant to Federal Rules of Evidence 401, 402, and 403, because there is no evidence that the crew members were dishonest and, since the witnesses are unavailable for trial, they are unable to rebut questions regarding their honesty. In response, Rolls Royce asserts that it does not intend to offer any evidence suggesting that the crewmembers acted dishonestly. Accordingly, because Rolls Royce does not intend to offer such evidence, the Court **GRANTS** PHI's request to exclude any reference made in the presence of the jury, alleging certain RUSTY EYMAED crew members were dishonest during their depositions.

### 4. Any testimony or reference that PHI used a hammer to install the No. 2 bearing that failed in this case or any other No. 2 bearings.

PHI also asks the Court to exclude any reference alleging that PHI, on any occasion, used a hammer to install a No. 2 bearing into an engine. One of Rolls Royce's theories is that PHI improperly installed the No. 2 bearing at issue with a hammer, because Dr. Stephen Edney, Rolls Royce's corporate representative, testified that in 2012 he observed a PHI mechanic using a hammer to install a No. 2 bearing. PHI argues that any evidence regarding that 2012 incident is inadmissible pursuant to Federal Rule of Evidence 404(b), which provides "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404. PHI asserts that Rolls Royce was not present during the installation of the No. 2 bearing at issue, and Rolls Royce intends to submit evidence regarding Dr. Edney's 2012 observation as character evidence, for the sole purpose of showing that PHI installed the No. 2 bearing at issue in a similar manner that Dr. Edney observed in 2012.

In response, Rolls Royce presents testimony from PHI's corporate representative and PHI's expert, Tom Yakubovich and Dr. Gerhard Fuchs, respectively, that PHI's practice includes hammering the No. 2 bearing in a similar way that Dr. Edney observed. "Evidence of other accidents in products liability cases is relevant … to show the cause of the accident." *Weir v. Crown Equip. Corp.,* 217 F.3d 453, 457 (7th Cir. 2000) (citing *Nachtsheim v. Beech Aircraft Corp.,* 847 F.2d 1261, 1268 (7th Cir.1988); *Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1185 (7th Cir.1992)). "However, before such evidence will be admitted, the proponent must show that the other accidents occurred under *substantially similar circumstances*." *Id.* (Citations omitted.) The Seventh Circuit held that "'substantially similar' does not mean 'identical.'" *Estate of Carey by Carey v. Hy-Temp Mfg., Inc*., 929 F.2d 1229, 1235 (7th Cir. 1991).

Accordingly, while inadmissible character evidence will not be allowed during trial, and the parties should not attempt to elicit such testimony, based on the evidence submitted by Rolls Royce, the Court declines at this stage of the litigation to omit Dr. Edney's testimony. For this reason, the Court **DENIES** the Motion in *Limine* regarding this evidence.

     **5.**     **<u>Any reference to the forum selection clause contained in Rolls Royce's Limited Warranty</u>**.

PHI also argues that the Court should exclude any reference to the forum selection clause contained in Rolls Royce's Limited Warranty, based on Federal Rules of Evidence 401, 402 and 403, because the forum selection clause is not relevant to any issues pending for trial and it is unduly prejudicial to PHI. PHI contends that, because the clause establishes that Indiana is the designated forum and the case is currently pending in Indiana, the clause would influence the jury and cause them to give undue weight to the limitations outlined in the Limited Warranty, despite the Warranty applying only to the No. 2 bearing and not the engine.

The Court finds that PHI's desires can be advanced through a limiting instruction to the jury or by stipulation. In a limiting instruction, the jury can be instructed that the Limited Warranty governs only the No. 2 bearing and not the engine in its entirety. Accordingly, the Court **DENIES** PHI's Motion in *Limine* regarding this evidence.

6. **Any reference of the Court's Order granting in part and denying in part Rolls Royce's Motion for Summary Judgment in the presence of the jury**.

Next, PHI requests the Court to exclude any reference in the presence of the jury regarding the Court's Order granting in part and denying in part Rolls Royce's Motion for Summary Judgment. ([Filing No. 204](#).) PHI contends that based on Federal Rules of Evidence 401, 402 and 403, the rulings are not relevant to the substance of the issues at trial and any reference to the Court's Order may unduly interfere with the weight that the jury gives to the evidence in question. The Court finds that information contained in the Order, specifically undisputed facts and legal findings, are relevant to the issues remaining for trial. Accordingly, the Court declines at this stage of the litigation to place a blanket prohibition on a broad category of testimony without the context of specific questions actually being asked during trial. For this reason, the Court **DENIES** the Motion in *Limine* regarding this evidence.

7. **Any reference in the presence of the jury about PHI's pending lawsuit in Louisiana against APICAL and OHS.**

PHI lastly asks the Court to exclude any reference in the presence of the jury about the pending Louisiana lawsuit against APICAL and OHS that arises out of the same accident currently pending before the Court. PHI argues that, based on Federal Rule of Evidence 403, any mention of the lawsuit will unduly prejudice PHI and confuse the jury, as the jury could deny PHI damages in this case because it believes that PHI could recover damages from the pending Louisiana case. PHI also argues pursuant to Federal Rules of Evidence 401 and 402 that the pending Louisiana

case is not relevant and does not bear on whether Rolls Royce is liable in this case because the failure of the engine in this case is different from the failure of the floatation device in the Louisiana case.

The Court concludes that, although the jury should have a complete understanding regarding the background of this case, any mention that litigation is pending in Louisiana is irrelevant and has no bearing on the issues remaining for trial in this case. Accordingly, the **GRANTS** this section of PHI's Motion in *Limine*.

**B.    Rolls Royce's Motions in *Limine***

Rolls Royce moves in *limine* on six topics. PHI filed a Response in Opposition to Rolls Royce's Motions in *Limine* on January 11, 2017. (Filing No. 235; Filing No. 236; Filing No. 237; Filing No. 238; Filing No. 239; Filing No. 240.) The Court will address each topic separately.

**1.    Any evidence of incidental or consequential damages.**

Rolls Royce asks the Court to exclude any evidence of incidental and consequential damages because, despite the Court's ruling that the Limited Warranty failed its essential purpose, the Limited Warranty governing the No. 2 bearing at issue specifically excludes consequential or incidental damages caused by the No. 2 bearing. Rolls Royce relies on several state and Northern District of Indiana cases when arguing that Indiana follows the "independent view," which refuses to categorically override an exclusion of consequential damages and gives effect to the terms of the contract. *See Iron Dynamics v. Alstom Power, Inc.,* No. 1:06-CV-357ALSTOM, 2007 WL 3046430, at *7 (N.D. Ind. Oct. 15, 2007) ("Under Indiana law, the enforceability of liability limitations is reviewed independently from any analysis of whether the limited remedies provided by the parties' agreement fail in their essential purpose"); *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E.2d 941, 947-48 (Ind. 2001) (holding "Indiana Code § 26–1–2–719(2)

9

does not categorically invalidate an exclusion of consequential damages when a limited remedy fails of its essential purpose." "Whether a limited remedy fails of its essential purpose is an issue of fact that a jury may determine" and "an exclusion of consequential damages stands unless it is unconscionable, and unconscionability is determined by a court as a matter of law.").

The Court **GRANTS** Rolls Royce's request to exclude any evidence of incidental and consequential damages regarding the No. 2 bearing, because the Court previously found as a matter of law that the Limited Warranty was conscionable and there is no dispute that the Limited Warranty excludes any consequential or incidental damages arising from the No. 2 bearing.

Rolls Royce also argues that, although PHI's engine defect claim is not limited by the Limited Warranty, the Court should exclude testimony about damages because PHI lacks any evidence that the engine at issue contained any defect when delivered in 1999 and that the defect proximately caused PHI's loss in December 2011. The Court, however, **DENIES** Rolls Royce's request to exclude any evidence of incidental and consequential damages caused by an engine defect because Rolls Royce has presented no evidentiary basis for excluding the evidence and the Court previously determined that a material issue of fact remains regarding whether an engine defect caused PHI's loss.

2. **Any evidence about the value of the helicopter and that the helicopter capsized.**

Rolls Royce next requests the Court to preclude any evidence that the helicopter at issue capsized and/or reference to the value of the lost helicopter. Rolls Royce argues that any mention of the above evidence runs counter to the Fifth Circuit's long held law that factual statements in the pleadings constitute binding judicial admissions. *See McCreary v. Richardson*, 738 F.3d 651, 659 n. 5 (5th Cir. 2013) (explaining the general principle that "factual statements in the pleadings constitute binding judicial admissions"); *Johnson v. Houston's Restaurant, Inc.*, 167 Fed. Appx.

393, 395-96 (5th Cir. 2006); *Morales v. Dep't of the Army*, 947 F.2d 766, 769 (5th Cir.1991); *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107 (5th Cir.1987). Rolls Royce contends that PHI failed to assert that Rolls Royce proximately caused the helicopter to invert and become a constructive total loss.

The Court declines at this stage of the litigation to prohibit this evidence or argument because Rolls Royce has presented no evidentiary basis for excluding the evidence and the Court previously determined that a material issue of fact remains regarding whether it was foreseeable to Rolls Royce that the helicopter would capsize. At the pretrial stage, the Court is unable to determine whether the evidence should be excluded. Accordingly, the Court **DENIES** Rolls Royce's Motion in *Limine* regarding this evidence.

### 3. Any evidence or testimony claiming the engine at issue was an effective "total loss".

Rolls Royce also asks the Court to prohibit any evidence or testimony at trial that Rolls Royce's engine was a "total loss" prior to the helicopter capsizing, because PHI failed to designate an expert and PHI failed to put forth evidence to suggest that the engine was irreparable. Rolls Royce relies on *Parrillo* when arguing that PHI cannot recover for a constructive total loss unless the expense of recovering and repairing the vessel would exceed the agreed value. *Parrillo v. Commercial Union Insurance Co.*, 85 F.3d 1245, 1249-50 (7th Cir. 1996).

The Court is unable to determine whether the evidence should be excluded at the pretrial stage because PHI disclosed experts who will testify regarding the "total loss" of the engine. ([Filing No. 244-1](#).) Accordingly, the Court **DENIES** Rolls Royce's Motion in *Limine* regarding this evidence.

### 4. Testimony from Dr. Gerhard Fuchs that the engine was unmerchantable.

Next, Rolls Royce requests the Court to exclude PHI's expert, Dr. Gerhard Fuchs, from offering opinions that the engine at issue was defective and not merchantable at the time of purchase in 1999. Rolls Royce contends that any testimony that Dr. Fuchs may offer, or that PHI attempts to solicit from him, relating to the merchantability of the engine should be excluded because PHI's Amended Complaint failed to state that the engine itself was not merchantable under Indiana law and Dr. Fuchs has not opined about the necessary factors to show unmerchantability under Ind.Code 26-1-2-314.

The Court declines at this stage of the litigation to prohibit this evidence or argument because Rolls Royce has presented no evidentiary basis for excluding the evidence and the Court previously determined that a material issue of fact remains regarding whether an engine defect caused PHI's loss. Accordingly, the Court **DENIES** this section of Rolls Royce's Motion in *Limine*.

### 5. Any reference to unrelated Federal Aviation Administration Airworthiness Directives ("FAA Directives"), NTSB Recommendations, and other related lawsuits or claims.

Rolls Royce also asks the Court to exclude any evidence referring to unrelated FAA Directives, NTSB safety recommendations, or unrelated lawsuits or claims against Rolls Royce regarding other Rolls Royce engines or components, pursuant to Federal Rule of Evidence 402, because the evidence is irrelevant to the issues for trial. Rolls Royce argues that if the Court permits such evidence, it would not only compound Rolls Royce's defensive burden, but based on Federal Rule of Evidence 403, it would confuse the jury and prejudice Rolls Royce.

To the extent that PHI intends to introduce relevant "[e]vidence of other accidents in products liability cases … to show the cause of the accident," "such evidence will be admitted,

[but] the proponent must show that the other accidents occurred under *substantially similar circumstances*." *Weir,* 217 F.3d at 457 (citations omitted). The Seventh Circuit has held that "'substantially similar' does not mean 'identical.'" *Estate of Carey by Carey,* 929 F.2d at 1235.

The Court is unable to determine from the evidence submitted by PHI detailing nine prior accidents relating to defects in Rolls Royce's No. 2 bearings and engines, whether those accidents occurred under substantially similar circumstances. The parties should be prepared to discuss this issue at the final pretrial conference. For this reason, the Court takes this issue of PHI's Motion in *Limine* under advisement.

### 6. Any evidence that the engine at issue was unmerchantable.

Rolls Royce lastly request the Court to prohibit PHI from offering evidence that the engine at issue was defective and not merchantable. Rolls Royce contends that PHI is aware that the engine is governed by a warranty, which disclaims any implied warranty of merchantability.

The Court declines at this stage of the litigation to prohibit this evidence or argument because Rolls Royce has presented no warranty specific to the engine at issue or any evidentiary basis for excluding the evidence. The Court also notes that it previously determined that a material issue of fact remains regarding whether an engine defect caused PHI's loss. Accordingly, the Court **DENIES** this section of Rolls Royce's Motion in *Limine*.

**SO ORDERED.**

Date: 1/17/2017

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kevin R. Tully
CHRISTOVICH & KEARNEY LLP
krtully@christovich.com

Howard Carter Marshall
CHRISTOVICH & KEARNEY LLP (NO)
hcmarshall@christovich.com

W. Nicholas Dietzen, IV
CHRISTOVICH & KEARNEY, LLP
wndietzen@christovich.com

Alex J Whitman
CUNNINGHAM SWAIM LLP
awhitman@cunninghamswaim.com

Michael Ross Cunningham
CUNNINGHAM SWAIM, LLP
rcunningham@cunninghamswaim.com

Bruce L. Kamplain
NORRIS CHOPLIN & SCHROEDER LLP
bkamplain@ncs-law.com

Matthew W. Melton
NORRIS CHOPLIN & SCHROEDER LLP
mmelton@ncs-law.com